UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMON DEJESUS MAGANA, et al.<br><br>Defendants. | No.  1:18-cr-00068-DAD-BAM<br><br>ORDER DENYING DEFENDANT<br>MAGANA'S MOTION TO SUPPRESS<br><br>(Doc. No. 55) |

This matter is before the court on defendant Ramon DeJesus Magana's motion to suppress all evidence obtained by the government as a result of its search of his cellular telephone, including data that recovered from that cell phone approximately two years after it was first seized by law enforcement during a traffic stop of defendant.  (Doc. No. 55.)  Defendant filed the pending motion on May 13, 2022 pursuant to Federal Rules of Criminal Procedure 12 and 41(g) and the Fourth Amendment of the Unites States Constitution.  (*Id.* at 6.)  The government filed an opposition to that motion to suppress evidence on July 5, 2022 (Doc. No. 61), and defendant filed his reply thereto on August 12, 2022 (Doc. No. 64).

A hearing on defendant's motion was held on August 15, 2022, at which Assistant Federal Defender Reed Grantham appeared on behalf of defendant Magana and Assistant United States Attorney Jessica Massey appeared on behalf of the government.  (Doc. No. 65.)  At the conclusion of the hearing, the court took defendant's pending motion under submission.  For the

1  reasons set forth below, the court will deny defendant's motion to suppress evidence.

2  **BACKGROUND**

3     The facts pertinent to the pending motion are not in dispute.  Defendant was arrested

4  during a traffic stop on February 21, 2018 in connection with an undercover operation conducted

5  by the Drug Enforcement Agency (DEA) and other agencies.  (Doc. No. 55 at 7–8.)  During the

6  traffic stop, officers searched the vehicle in which defendant was a passenger and recovered five

7  kilograms of fentanyl and one kilogram of 4-ANPP, an analog to fentanyl, in the trunk.  (*Id.* at 8;

8  Doc. No. 55-1 at 6.)  Officers also found four electronic devices in the vehicle—three cellular

9  telephones and one iPad.  (Doc. No. 55 at 8.)  One of the electronic devices was a black LG

10  cellular telephone with a black protective cover located in the front passenger seat where

11  defendant was sitting, and which was identified as "N-3" in the DEA's property seizure report.

12  (*Id.*)  Defendant Magana, along with the driver of the vehicle, co-defendant Maurillo Serrano

13  Cardenas, were both arrested and charged by way of a federal criminal complaint on March 8,

14  2018, with conspiracy to distribute fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1),

15  841(b)(1)(A).  (Doc. No. 1.)  A federal indictment later was later returned by the grand jury for

16  this district on April 5, 2018, charging co-defendants Cardenas and Magana in Count 1 with

17  conspiracy to distribute fentanyl and aiding and abetting, in violation of 21 U.S.C. §§ 846,

18  841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; and in Count 2 with possession of fentanyl with

19  intent to distribute and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A),

20  and 18 U.S.C. § 2.[1]  (Doc. No. 13.)

21     On the same day the indictment was returned, the government applied for and obtained a

22  search warrant authorizing agents to search the four electronic devices that had been recovered

23  during the February 21, 2018 traffic stop (the "first search warrant").  (Doc. Nos. 55 at 8; 55-1 at

24  36–41.)  This first search warrant "authorize[d] the search and forensic examination of []

25  electronic devices . . . for the purposes of identifying the electronically stored information

26

27  [1]  Defendant Cardenas is currently scheduled to appear before the court for a change of plea hearing on September 26, 2022, pursuant to a plea agreement filed on the court's docket on March 16, 2022.  (Doc. Nos. 46, 59.)  Defendant Cardenas has not joined in the pending motion

28  to suppress evidence.

described" and was to be executed on or before April 19, 2018 (i.e., execution was not to exceed 14 days from the signing of the search warrant). (Doc. No. 55-1 at 36–41.) The first search warrant further stated in its Attachment B describing the items to be seized under the heading "nature of examination" that "[p]ursuant to Fed. R. Crim. P. Rule 41(e)(2)(B) . . . this warrant permits the examination of [the four electronic devices seized on February 21, 2018] . . . [and] may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium . . . ." (*Id.* at 40.) On April 9, 2018, all four of the seized electronic devices were searched, and logical extractions created, but the extraction report for device N-3 contained no data.[2] (*Id.* at 9.) The government has conceded, however, that it never filed a return of the first search warrant so reflecting with the court. (Doc. No. 61 at 7.)

Approximately one year later, on March 27, 2019, the government applied for and obtained a second search warrant to search N-3 and another cellular telephone (N-2) (the "second search warrant"). (Doc. No. 55 at 9.) In the government's application for this second search warrant, it stated that the first search warrant had been executed on four electronic devices on April 9, 2018, but that the data extracted from two of those devices, N-3 and N-2, "reported minimal information" because the search "was limited by the technology available." (Doc. No. 55-1 at 58.) The government reported it was seeking the second search warrant "[d]ue to the advanced software and technology now available" and because the government "believe[d] that a search today may be more successful at extracting evidence than on April 9, 2018." (*Id.*) Like the first search warrant, the second search warrant was to be executed within 14 days of its issuance and sought the search for and seizure of the same categories of information, which were to be obtained "[p]ursuant to Fed. R. Crim. P. Rule 41(e)(2)(B)." (*Id.* at 88, 92.) In the affidavit submitted in support of the application for the second search warrant—and in contrast to the affidavit submitted in seeking the first search warrant—the issuing magistrate judge interlineated in handwriting the following language: "If an original device does <u>not</u> contain any data falling

---

[2] More specifically, "[a] data extraction was conducted on the SIM card" for N-3, but the extraction could not access any of the information sought by the first search warrant, such as contacts, call logs, audio recordings, text messages, photos, videos, GPS information, internet browsing history, and so on. (Doc. No. 55-1 at 39, 58.)

1  within the list of items to be seized pursuant to this warrant, the government will return the

2  original device to its owner within 90 days if it can be lawfully possessed; seal any image made

3  and not review sealed image." (*Id.* at 65.)[3]  After the second search warrant was issued on March

4  27, 2019, it was purportedly executed on April 1, 2019 at the DEA's Sacramento district office,

5  however, again no additional data or information was successfully extracted from N-3.[4]  (*See*

6  Doc. Nos. 55 at 10–12; 61 at 8.)

7      Over seven months later, on November 25, 2019, a DEA agent indicated in a report of the

8  investigation that the "case remains open pending the service of a search warrant on [] N-3, which

9  is a cellular telephone with a lock feature that is yet to be disabled" but that there were

10  "continuing efforts to gain access to [] N-3 and perform the search." (Doc. No. 55-1 at 75.)

11  Finally, in a subsequent DEA report of the investigation dated April 24, 2020, a DEA agent

12  reported that in "[e]arly 2020 . . . an updated software [became] available for the phone data

13  transfer device" and that on April 7, 2020, DEA Investigative Technology Specialist (ITS)

14  Jeremy Look "successfully downloaded the phone data from [] N-3." (*Id.* at 76.)  The extracted

15  data from N-3 was later produced to defendant's counsel in discovery on July 1, 2020.  (Doc. No.

16  55-1 at 78.)  According to the government's opposition to the pending motion, defendant

17  Magana's cellular telephone, N-3, has remained in the custody of the DEA since its initial seizure

18  on February 21, 2018, but the government again never filed a return following the execution of

19  the second search warrant, even after the successful extraction of data from N-3 occurred on April

20  7, 2020.  (Doc. No. 61 at 6, 8.)

21      Defendant Magana has moved to suppress all evidence obtained as a result of the

22  purportedly unlawful search of his cell phone (N-3), specifically the evidence derived from the

23  successful April 7, 2020 extraction of data from N-3.  (Doc. No. 55.)

24

25  [3]  The undersigned notes that this interlineation by the issuing magistrate judge was made on the
affidavit in support of the issuance of the requested search warrant and not on the search warrant

26  itself.

27  [4]  There is a dispute between the parties regarding what it means for the second search warrant to
have been "executed" and when the execution of that warrant occurred.  (Doc. Nos. 61 at 9–11;

28  64 at 3–5.)  This legal question will be addressed in the court's analysis below.

**ANALYSIS**

Defendant Magana makes two principal arguments in moving to suppress all evidence recovered from N-3:  (1) the government's execution of the second search warrant violated the warrant's terms by not being conducted within 14 days of its issuance, which thereby rendered the search conducted on April 7, 2020, a warrantless search; and (2) the government's retention of N-3 for over two years violated the terms of both search warrants and was unreasonable in violation of the Fourth Amendment to the United States Constitution.

**A.      The Timeliness of the Government's Execution of the Second Search Warrant**

Federal Rule of Criminal Procedure 41(e) generally requires that a warrant to search for and seize property must direct law enforcement officers to "execute the warrant with a specified time no longer than 14 days."  Fed. R. Crim. P. 41(e)(2)(A)(i).  Rule 41(e) also provides that a warrant "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information."  Fed. R. Crim. P. 41(e)(2)(B).  In such cases, "[u]nless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant" because "[t]he time for executing the warrant . . . refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review."  *Id.*; *see also United States v. Cleveland*, 907 F.3d 423, 431 (6th Cir. 2018) (holding that "under Rule 41, an execution period specified in a warrant applies to the time to seize the device or to conduct on-site copying of information from the device" and that the execution period deadline "does not apply to the time to analyze and investigate the contents of the device off-site").  "This rule acknowledges the need for a two-step process:  officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant."  Fed. R. Crim. P. 41(e)(2)(B), advisory committee's note to 2009 amendment.  As the advisory committee further explained, "[a] substantial amount of time can be involved in the forensic imaging and review of information" due to "the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs."  *Id.*

/////

5

1    The parties disagree regarding precisely when the second search warrant was executed

2    here.  (*See* Doc. Nos. 55 at 11–14; 61 at 9–15.)  While defendant argues the government had only

3    14 days from the date the second search warrant was issued to complete its search of N-3, the

4    government maintains that it merely needed to "seize" N-3 within the 14 days and was permitted

5    to conduct a later review of its data pursuant to Rule 41(e)(2)(B).  (*See* Doc. Nos. 55 at 11–14; 61

6    at 9–15.)  The government's position is that it seized N-3—a device already in its custody at the

7    time—and executed the second search warrant by making an attempt to extract date from that cell

8    phone on April 1, 2019, five days after the warrant was issued, and that the year-later successful

9    extraction of data was permissible under Rule 41(e)(2)(B).  (*See* Doc. No. 61 at 9–15.)  In his

10   reply, defendant contends that the government's argument is "misplaced because the [second]

11   search warrant itself—and not Rule 41—governed the timing of the search."  (Doc. No. 64 at 1.)

12   Specifically, defendant contends that the language appearing in the second search warrant, its

13   application, the DEA reports of investigation, and the DEA declarations filed in support of the

14   government opposition all "establish" that the second search warrant only authorized the

15   government to complete its "search" or "examination" of a device within 14 days of the issuance

16   of that warrant.  (*Id.* at 3–7.)

17   The court concludes that the government did not violate the terms of the second search

18   warrant by conducting the data extraction from N-3 outside the 14-day time period specified in

19   that warrant because "[t]he time for executing the warrant . . . refers to the seizure or on-site

20   copying of the media or information."  Fed. R. Crim. P. 41(e)(2)(B).  Here, the second search

21   warrant was timely executed because "the electronically stored information [wa]s seized and

22   brought within the government's control" as a result of the government's already existing custody

23   of N-3.[5]  *See United States v. Carrington*, 700 F. App'x 224, 232 (4th Cir. 2017) ("[A]n initial

24   seizure of [defendant's] telephone after the 14-day expiration period would have contravened the

25   terms of the warrant—but that is not what happened here, where the phone already was in

---

[5]  Defendant Magana does not challenge the government's February 21, 2018 seizure of his
cellular telephone.  Moreover, the court's analysis focuses only on the second search warrant
because defendant Magana does not appear to contend that that the first search warrant was not
timely executed.  (*See* Doc. No. 55 at 11–14.)

government custody pursuant to a lawful seizure.");[6] *see also United States v. Estime*, No. 19-cr-711-NSR, 2020 WL 6075554, at *14 (S.D.N.Y. Oct. 14, 2020) ("Accordingly, this Court agrees with the majority of courts that, under Rule 41(e)(2)(B), a search warrant for ESI is executed through 'the seizure . . . of the media' which is accomplished when the physical storage device is in the custody of the government."); *United States v. Sosa*, 379 F. Supp. 3d 217, 222 (S.D.N.Y. 2019) (rejecting the argument that a search warrant for a cellular telephone was not "executed" before the warrant's 14-day deadline when it had remained in the government's possession since its original seizure incident to arrest and the cellular telephone's data was not extracted until after the 14-day period).  Even if some action was required to be taken by the government within 14 days of the issuance of the warrant to "seize" a cellular telephone that was already in its custody, and thus to "execute" the second search warrant under Rule 41(e)(2)(B), that action occurred within 14 days of the issuance of the second search warrant.  Although defendant contends that "it remains unclear what precisely occurred with the device on April 1, 2019,"[7] the exhibits attached to the government's opposition reflect that N-3 was—at the very least—transferred to DEA Investigative Technology Specialist (ITS) Jeremy Look on April 1, 2019 for the purposes of conducting a "Cellebrite Mobile Device Extraction,"[8] and that an attempt to extract data from N-3

/////

/////

---

[6]  Citation to this unpublished Fourth Circuit opinion is appropriate pursuant to Fourth Circuit Local Rule 32.1.

[7]  In another context, defendant refers to what took place on this date as the "April 1, 2019 search."  (Doc. No. 55 at 20.)

[8]  Defendant points to the fact that a November 25, 2019 DEA report of investigation stated that the "case remains open *pending the service of a search warrant*" as evidence that the second search warrant went unexecuted within the 14-day time period.  (Doc. No. 64 at 5–6) (emphasis added).   However, the author of that November 25, 2019 report submitted a corrected report and a declaration in support of the government's opposition stating that he had misunderstood the status of the second search warrant when he wrote his November 25, 2019 report and at the time "had recently been assigned the case."  (Doc. No. 61-1 at 5, 19.)  Moreover, an earlier August 1, 2019 report, authored by the special agent who actually transferred N-3 to ITS Look for the Cellebrite extraction, had written that the second search warrant was "executed" on April 1, 2019. (*See* Doc. No. 55-1 at 73–74.)

1    was made that same day by ITS Look.[9]  (Doc. Nos. 61-1 at 2, 7, 14, 17; 55-1 at 73–74, 97.)  In

2    other words, even if the government's continuing custody of N-3 alone was insufficient to

3    constitute the "execution" of the second search warrant, then the government's showing

4    summarized above is sufficient to establish that the second search warrant was executed no later

5    than on April 1, 2019, within 14 days of its issuance.  *See Cleveland*, 907 F.3d at 431 (finding

6    that the execution of a warrant authorizing the search of a cellular telephone that was already in

7    law enforcement custody "occurred when the cell phone was removed from its location and

8    shipped to the analytics laboratory"); *see also Estime*, 2020 WL 6075554, at *14 (finding that a

9    "seizure" under Rule 41(e)(2)(B) is "accomplished when the physical storage device is in the

10   custody of the government").

11          Moreover, defendant's contention that the second search warrant—and its requirement of

12   execution within 14-days of its issuance—referred *only* to completing a search of, and not the

13   seizing of, N-3 is not supported by a review of the second search warrant.  (*See* Doc. Nos. 55 at

14   13–14; 64 at 2–5); *see also* Fed. R. Crim. P. 41(e)(2)(B) ("*Unless otherwise specified*, the warrant

15   authorizes a later review of the media or information consistent with the warrant.") (emphasis

16   added).  Here, there was simply no time limit imposed by on the executing agents by the issuing

17   magistrate judge for the completion of an off-site review of the electronically stored information

18   /////

19   /////

20   /////

21   /////

22

23   [9]  It is true that the attempt to extract data on April 1, 2019 is not clearly documented by way of

24   any declaration of ITS Look, but the government has represented that because ITS Look
     unexpectedly passed away in 2021, no such declaration could be offered.  (Doc. No. 61 at 8 n.3.)

25   Nevertheless, the government has submitted the following documents in support of its opposition
     evidencing that an attempt to extract data from N-3 did occur on April 1, 2019:  a property receipt

26   reflecting that ITS Look received N-3 on April 1, 2019; the final extraction report as to N-3
     reflecting a time/date of April 1, 2019, indicating that N-3 was turned on or otherwise accessed in

27   some manner on that date; and a declaration from Special Agent Trang Le, who transferred the
     phone to ITS Look, stating that ITS Look "executed the Second Search Warrant on April 1, 2019,

28   by plugging the device into a phone data transfer device."  (Doc. No. 61-1 at 14, 17, 23.)

that had been seized.[10]   *Cf. United States v. Nicholson*, 24 F.4th 1341, 1351–52 (11th Cir. 2022) (concluding that the government's negligent violation of an "addendum appended to the warrant that required that any search of electronic media be completed within sixty days" by waiting six months to complete its search did not require the suppression of evidence ultimately obtained because the probable cause underlying the warrant did not dissipate during any delay, the defendant was not prejudiced by the delay, and the government did not deliberately disregard the warrant's time limit), *cert. denied*, __U.S.__, 142 S. Ct. 2795 (2022).   In fact, the second search warrant appears to track the language of Rule 41(e)(2)(B) in stating that "[*p*]*ursuant to* Fed. R. Crim. P. Rule 41 (e)(2)(B), this warrant permits the examination of [N-3] . . . [and] may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium" and authorized the executing agents to "search for and attempt to recover deleted, hidden, or encrypted data."  (Doc. No. 55-1 at 71–72) (emphasis added).   Indeed, as the advisory committee has explained, when conducting searches for electronic data, certain obstacles such as encrypted data are among the reasons that "[a] substantial amount of time can be involved in the forensic imaging and review of information."  Fed. R. Crim. P. 41(e)(2)(B), advisory committee's note to 2009 amendment.   For this reason, the advisory committee concluded that there was "no presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place" after it had been seized.   *Id.* ("[T]he practical reality is that there is no basis for a 'one size fits all' presumptive

---

[10]  To the extent defendant relies on the magistrate judge's interlineation on the affidavit in support of the second search warrant application, the undersigned observes that the added language, at most, imposed only a *conditional* limit on the government's retention of defendant's cellular telephone.  (*See* Doc. No. 55-1 at 65) ("If an original device does <u>not</u> contain any data falling within the list of items to be seized pursuant to this warrant, the government will return the original device to its owner within 90 days if it can be lawfully possessed; seal any image made and not review sealed image.")  Here, the government could not access the data within N-3 to determine whether it fell within the scope of the second search warrant until April 7, 2020.  (*Id.* at 76.)  Thus, the conditional language requiring return of N-3 within 90 days could not have been triggered before that date.  *See Estime*, 2020 WL 6075554, at *15 (finding that the government was not required to return cellular telephones despite language in the warrant requiring their return within 60 days "[i]f the Government determines that the Subject Devices are no longer necessary to retrieve and preserve the data on the devices" because the data had still not been successfully extracted from the devices and the government had made no such determination).

1   period.").  As such, defendant's insistence that there was a 14-day time limit for the government

2   to complete its search of N-3 for electronic data is inconsistent with the text of both the second

3   search warrant and Rule 41(e)(2)(B).

4          Accordingly, the court concludes that the second search warrant did not specify a specific

5   deadline within which the search of N-3 for electronic data had to be completed and that the

6   second search warrant was timely executed pursuant to Rule 41(e)(2)(B) when the government

7   "seized" N-3 within 14 days of the issuance of the warrant on April 1, 2019.[11]

8   **B.**      **The Reasonableness of the Government's Retention of Defendant's Cellular**

9           **Telephone (N-3)**

10          Defendant next argues that the government's retention of his cellular telephone (N-3) for

11   over two years—as counted from the initial seizure of N-3 during the traffic stop on February 21,

12   2018 until the successful extraction of the data from it on April 7, 2020—is unreasonable and in

13   violation of the Fourth Amendment.  (Doc. No. 64 at 7–9.)  Defendant also contends that the

14   government's retention of N-3 violated the terms of both search warrants that were issued, thus

15   making any evidence obtained from the data search of N-3 the "fruit of the poisonous tree" and

16   subject to suppression pursuant to the exclusionary rule.  (Doc. No. 55 at 15–21.)

17          "The general touchstone of reasonableness which governs Fourth Amendment analysis . . .

18   governs the method of execution of the warrant."  *United States v. Ramirez*, 523 U.S. 65, 71

19   (1998).  "[S]earches pursuant to a warrant will rarely require any deep inquiry into

20   reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law

21   enforcement officer has acted in good faith in conducting the search."  *United States v. Leon*, 468

22   U.S. 897, 922 (1984) (internal citation and quotations omitted).  Nevertheless, "[t]he

23   reasonableness of the officer's acts both in executing the warrant and in performing a subsequent

24   search of seized materials remains subject to judicial review."  *United States v. Hill*, 459 F.3d

25   _____

26   [11]  In addition, because the court concludes that the government's transfer of the N-3 to an
    investigative technology specialist on April 1, 2019 for purposes of conducting a data extraction

27   constituted an execution of the second search warrant, the court need not—and does not—
    determine whether the government merely continuing to keep N-3 in its custody on April 1, 2019

28   constituted an execution of the second search warrant.

966, 978 (9th Cir. 2006).  In the context of search warrants for electronic data, "there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence seized falls within the scope of a warrant."  *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012); *see also United States v. Schesso*, 730 F.3d 1040, 1046 & n.3 (9th Cir. 2013) (upholding a search warrant as reasonable under the Fourth Amendment when it allowed for the seizure and "off-site analysis and recovery . . . of [defendant's] entire computer system and associated digital storage devices" and noting that the process is "not out of the ordinary" and is expressly contemplated by Rule 41(e)(2)(B)); *United States v. Ivers*, 430 F. App'x 573, 575 (9th Cir. 2011)[12] (affirming the denial of a motion to suppress despite the government's unspecified delay in searching defendant's computer and noting that "[e]lectronic data searches may take longer than traditional searches because '[e]lectronic storage facilities intermingle data making them difficult to retrieve' without close analysis 'in a controlled environment.'") (quoting *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1175 (9th Cir. 2010)).[13]

---

[12]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[13]  Rule 41(e)(2)(B) also supports the conclusion that there is no established upper time limit on how long the government has to complete its search of seized electronic data:

> While consideration was given to a presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place, the practical reality is that there is no basis for a "one size fits all" presumptive period.  A substantial amount of time can be involved in the forensic imaging and review of information.  This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs.  The rule does not prevent a judge from imposing a deadline for the return of the storage media or access to the electronically stored information at the time the warrant is issued.  However, to arbitrarily set a presumptive time period for the return could result in frequent petitions to the court for additional time.

Fed. R. Crim. P. 41(e)(2)(B), advisory committee note to 2009 amendment; *see also Schesso*, 730 F.3d at 1050 ("Ultimately, the proper balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures of electronic data must be determined on a case-by-case basis.").

1   Although the government's delay in completing the search of defendant's cellular

2   telephone and extracting the data from it was significant—approximately two years—similar

3   delays due to the government's inability to obtain access to data from electronic devices, whether

4   due to encryption or an inability to access a locked cell phone, have been found to be reasonable

5   under the Fourth Amendment. *See, e.g.*, *United States v. Jarman*, 847 F.3d 259, 266–67 (5th Cir.

6   2017) (affirming denial of motion to suppress computer data seized pursuant to a search warrant

7   when the government retained the data and took 23 months to complete its review because the

8   government needed to conduct both a "taint process" to segregate attorney-client privileged

9   materials and a "forensic examination"); *United States v. Dixon*, No. 3:20-cr-00003-TCB-RGV,

10   2021 WL 2327063, at *6 (N.D. Ga. Apr. 15, 2021) ("Accordingly, although the government's 24-

11   month delay in searching the iPhone was 'certainly lengthy,' it 'does not furnish a basis to

12   suppress evidence obtained from [the iPhone].'"), *report and recommendation adopted*, 2021 WL

13   1976679 (N.D. Ga. May 18, 2021); *see also United States v. Morgan*, 443 F. Supp. 3d 405, 406

14   (W.D.N.Y. 2020) (denying a defendant's motion to return a locked iPhone that had been seized

15   22 months earlier when the government still had not been able to unlock the iPhone, concluding

16   that "with trial not scheduled to commence until next year . . . there is still plenty of time for the

17   government to access the iPhone's contents"); *United States v. Pinto-Thomaz*, 352 F. Supp. 3d

18   287, 312 (S.D.N.Y. 2018) (denying a motion to return a locked iPhone that the government had

19   held for 10 months without successfully extracting its data and concluding that "the Government

20   has not exceeded any constitutional or Rule 41 deadline for concluding its search of the iPhone

21   given the difficulties posed by encryption").[14]   The court notes that this is a case in which the

22

23   [14]   The government cites a Ninth Circuit decision for the proposition that a five-year delay in
conducting a review of data extracted from a defendant's cellular telephone is permissible under

24   the Fourth Amendment.  (Doc. No. 61 at 13) (citing *United States v. Johnston*, 789 F.3d 934, 942
(9th Cir. 2015)).  However, the decision in *Johnston* is inapposite here because it did not concern

25   the length of time an electronic device was retained following the issuance of a warrant due to the
government's inability to access the data within the device.  Rather, in *Johnston*, the defendant

26   challenged a government search that occurred five years after his computer was seized, arguing
that the government was "rummaging for more offenses" beyond the scope of authority

27   authorized by the search warrant, since the government had already searched the computer two
times before and recovered evidence against the defendant.  *Johnston*, 789 F.3d at 942.  The court

28

1    executing agents experienced delay in being able to gain access to the device's electronic data and

2    not one in which the executing agents gained access to that data initially and merely returned to

3    review and study the accessed data repeatedly over a lengthy period of time for evidence

4    potentially helpful to the prosecution.

5         Here, the government maintains that the "sole reason for the delay in downloading and

6    reviewing the data . . . was due to the technological limitations in attempting to bypass the

7    device's lock feature." (Doc. No. 61 at 15.) The government's cited basis for the delay in

8    recovering the sought after data in question has "been credited by the advisory committee when it

9    noted that '[a] substantial amount of time can be involved in the forensic imaging and review of

10   information' because of 'difficulties created by encryption.'" *Estime*, 2020 WL 6075554, at *15

11   (quoting Fed. R. Crim. P. 41(e)(2)(B), advisory committee notes to 2009 amendment and holding

12   that the government's retention of a still-unlocked cellular telephone for more than 10 months

13   was not unreasonable under the Fourth Amendment); *see also Sosa*, 379 F. Supp. 3d at 222

14   (finding that delays of 10 and 15 months to search cellular telephones were reasonable even

15   though the government provided no basis for the delay in extracting data and the searches were

16   ultimately completed only three months before defendant's trial).

17        In addition, defendant Magana does not allege any misconduct by the government in its

18   review of the electronically stored information collected from N-3 such as, for example, that the

19   government unnecessarily maintained possession of data falling outside the scope of the warrant

20   or relied on data falling outside the scope of the warrant in its prosecution of him. *See Estime*,

21   2020 WL 6075554, at *15. Nor has defendant Magana argued that he was prejudiced in some

22   manner by the government's lengthy retention of his cell phone (N-3), or that the probable cause

23   underlying the search warrant became stale before the government completed its search for the

24   data stored on N-3. *See United States v. Aboshady*, 951 F.3d 1, 7 (1st Cir. 2020) ("An

25   'unreasonable delay' in conducting a search that had been authorized by a warrant could 'result[ ]

26

27   rejected defendant's argument, finding that the plain language of the search warrant authorized
     the scope of the last search of the computer that led to the discovery of evidence with respect to
28   additional, closely related charges against defendant. *See id.*

in the lapse of probable cause,' but there is no evidence in the record here that suffices to show that probable cause had lapsed at the time that any particular search of the data may have been conducted.") (internal citations and footnotes omitted).  Indeed, defendant Magana did not even seek the return of his cellular telephone (N-3) until after the government's successful extraction of the data from it and well after the government obtained a second search warrant based upon a showing of probable cause halfway through its two-year retention of it.  (*See* Doc. No. 55-1 at 67.)  Rather, defendant's principal argument in seeking suppression of evidence is that the government retained an *unaccessed* cellular telephone (N-3) for a period of time that was unreasonable under the Fourth Amendment.  However, the district court decisions put forth by defendant Magana in his reply brief suggesting the government's retention of his cell phone was unreasonable are readily distinguishable from the circumstances presented in this case.  (*See* Doc. No. 64 at 8–9.)

For instance, defendant Magana's reliance on the decision in *United States v. Metter*, 860 F. Supp. 2d 205, 211–16 (E.D.N.Y. 2012), is misplaced because in that case the government did not have difficulty accessing the data it sought to review.  Instead, the electronic data evidence was suppressed in *Metter* because the government never reviewed the successfully imaged data even after the passage of 15 months, and in fact, had "no plans whatsoever to *begin* review of that data to determine whether any irrelevant, personal information was improperly seized."  *Metter*, 860 F. Supp. 2d at 214–15 ("The point at which the government faltered is its delay in reviewing the imaged evidence to determine whether the evidence that the government seized and imaged fell within the scope of the categories of information sought in the search warrants.").  Similarly, *United States v. Nasher-Alneam*, 399 F. Supp. 3d 579, 593–94 (S.D.W. Va. 2019), cited by defendant, is inapplicable here.  Although the government's search of electronic data in *Nasher-Alneam* occurred 15 months after defendant's computer was seized, that search was determined to be unlawful because it exceeded the scope of the warrant authorizing it, not due to the passage of 15 months.  *See id.*  Specifically, in that case the warrant "authorized a search of defendant's electronic data for evidence of violations of the Controlled Substances Act" but the government instead relied on that warrant to "search for evidence of healthcare billing fraud."  *Id.* at 594

14

1    (holding that "the government should have gotten a second warrant to conduct its search for

2    evidence of healthcare billing fraud").  Similar to the decision in *Metter*, *Nasher-Alneam* did not

3    concern the length of the government's retention of an *unaccessed* digital device containing

4    electronic data.

5            The last two district court decisions cited by defendant in his reply brief are also

6    distinguishable and do not support the suppression of evidence in this case.  *See, e.g.*, *United*

7    *States v. Filippi*, No. 5:15-cr-133 BKS, 2015 WL 5789846, at *4 (N.D.N.Y. Sept. 9, 2015)

8    (denying a motion to suppress where the government committed a "technical violation" of Rule

9    41 by searching a cellular telephone 25 days after a warrant's 60-day deadline for the government

10   to complete its search because the court found that the search was nonetheless reasonable under

11   the Fourth Amendment); *United States v. Brunette*, 76 F. Supp. 2d 30, 42 (D. Me. 1999) (finding

12   that where a search warrant imposed a specific timeframe within which the government was to

13   begin its search for electronic data but the government failed to do so, any evidence gathered

14   from the search was to be suppressed), *aff'd*, 256 F.3d 14 (1st Cir. 2001).  Both of these decisions

15   are distinguishable because, unlike the search warrants in this case, the search warrants in *Filippi*

16   and *Brunette* both imposed specific deadlines by which the government was required to complete

17   its search of electronic devices for data and, in both cases, the government failed to follow the

18   search warrant's explicit time limitation requirement.  *See Filippi*, 2015 WL 5789846, at *4;

19   *Brunette*, 76 F. Supp. 2d at 42.

20           Finally, defendant Magana argues that the government unlawfully retained possession of

21   his cellular telephone (N-3) in violation of the terms of both the first and second search warrants,

22   thus making any evidence obtained from N-3 "fruit of the poisonous tree" and subject to

23   suppression under the exclusionary rule.  (Doc. No. 55 at 15–21.)  However, the language that

24   defendant points to is actually only found in the first search warrant and in *the application* to the

25   second search warrant and, in any event, the language that defendant contends required N-3's

26   return is conditional and the triggering condition never occurred.  (*See id.* at 15) ("*If, after*

27   *conducting the initial search, law enforcement personnel determine that the devices contain any*

28   *data falling within the list of items to be seized pursuant to this warrant*, the government will

1   retain the original device.") (emphasis added); (*id.* at 16) ("*If an original device does not contain*

2   *any data falling within the list of items to be seized pursuant to this warrant*, the government will

3   return that original device to its owner within 90 days if it can be lawfully possessed. . . .")

4   (emphasis added).  As the government correctly points out, it could not have violated either of

5   these provisions before it had successfully extracted the data from N-3 on April 7, 2020 because

6   until that extraction was completed, the government could not have determined whether any of

7   the data stored on N-3 fell within the scope of the search warrants.  (Doc. No. 61 at 16–17.)

8   Moreover, it would be disingenuous to claim that the government's initial unsuccessful attempt to

9   extract data from N-3 in 2018 meant that the device did not "contain any data falling within the

10   list of items to be seized pursuant to [the first search warrant]."  (Doc. No. 61 at 7.)  As correctly

11   stated in the government's opposition, the DEA at that time did conduct "a logical extraction

12   from the SIM card contained within" N-3, which "did not contain any data from the device

13   itself."  (*Id.*)  Defendant does not cite any persuasive legal authority supporting his argument that

14   the government's retaining of the electronic devices was illegal and requires suppression of the

15   electronic data evidence eventually retrieved therefrom.  Indeed, it appears that defendant

16   Magana has abandoned any such argument in his reply brief.[15]  (*See* Doc. Nos. 55 at 18–20; 64 at

17   7–9.)  Accordingly, the court concludes that the government did not unlawfully retain defendant

18   Magana's cell phone (N-3) in a manner that violated the terms of either the first or second search

19   warrants.  Thus, suppression of that evidence, as the tainted fruit of the "poisonous tree" or

20   otherwise, is not appropriate.

21   /////

---

22
23   [15]  The only authority that defendant relies on in support of this argument is a concurring opinion
from the Ninth Circuit's decision in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d
24   1162, 1178–80 (9th Cir. 2010) (Kozinski, C.J., concurring), but the specific language quoted from
that decision, in fact, confirms the conclusion reached by the court in this case.  (Doc. No. 55 at
25   18.)  As then-Chief Judge Kozinski advised magistrate judges on issuing search warrants for
electronically stored information, "[*o*]*nce the data has been segregated* . . . any remaining copies
26   should be destroyed or, at least so long as they may be lawfully possessed by the party from
whom they were seized, returned along with the actual physical medium that may have been
27   seized (such as a hard drive or computer)."  *Comprehensive Drug Testing*, 621 F.3d at 1179
(emphasis added).  Here, no data from defendant's cell phone had even been accessed by the
28   government until April 2020, let alone reviewed and segregated.

1    In the end, although the delay of approximately two years was certainly lengthy, and

2    could be problematic under different circumstances, *see, e.g.*, *Metter*, 860 F. Supp. 2d at 211–16,

3    the amount of time that passed before the data was recovered from the seized electronic device

4    was not unreasonable under the Fourth Amendment where, as here, the sole reason for the delay

5    was the government's inability to gain access to a locked cellular telephone and when the search

6    was promptly completed after such access was achieved.

7    **C.     Good Faith Exception and Return of Property**

8    The court need not reach the parties' arguments regarding the applicability of the good

9    faith exception to exclusionary rule because the court has concluded that neither Rule 41 nor the

10    Fourth Amendment were violated.  (*See* Doc. Nos. 61 at 18–20; 64 at 9–12); *see also Cleveland*,

11    907 F.3d at 432 n.4 ("Because we hold that extraction of the cellular data did not violate the

12    warrant at issue, we need not reach the parties' alternative argument regarding the good-faith

13    exception to the exclusionary rule.").

14    Moreover, although the parties have only briefly addressed the return of property aspect of

15    defendant's pending motion, it appears given the court's conclusion that the April 7, 2020 search

16    was lawful, the government was also permitted to retain possession of N-3 under the terms of the

17    second search warrant because it found data falling within the list of items to be seized pursuant

18    to the warrant.  (*See* Doc. No. 55-1 at 72) ("If, after conducting the initial search, law

19    enforcement personnel determine that the devices contain any data falling within the list of items

20    to be seized pursuant to this warrant, the government will retain the original digital device . . . .").

21    Accordingly, to the extent defendant's pending motion seeks the return of his cellular

22    telephone (N-3) pursuant to Rule 41(g), the motion will also be denied.

23                                            **CONCLUSION**

24    For the reasons explained above,

25    1.     Defendant Magana's motion to suppress (Doc. No. 55) is denied in its entirety;

26    2.     This case is scheduled for a status conference on September 28, 2022 at 1:00 p.m.

27            before Magistrate Judge Barbara A. McAuliffe; and

28

3.    The Clerk of the Court is directed to now reassign this case to U.S. District Judge
Ana I. de Alba and the parties are advised that all future filings in this case shall
bear the new case number of 1:18-cr-00068-ADA-BAM.

IT IS SO ORDERED.

Dated:   **September 14, 2022**

_____
UNITED STATES DISTRICT JUDGE